IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| CHRISTOS KOUKOUVITAKIS, | ) | CASE NO.1:19-CV-02875-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | United States District Judge |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | CARMEN E. HENDERSON |
| SECURITY, | ) | |
| | ) | REPORT & RECOMMENDATION |
| Defendant. | ) | |

**I. Introduction**

Plaintiff, Christos Koukouvitakis ("Koukouvitakis" or "claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court AFFIRM the Commissioner's decision.

**II. Procedural History**

On May 31, 2017, claimant filed applications for DIB and SSI alleging a disability onset date of December 23, 2015. (ECF No. 11 at 244). The applications were denied initially and upon reconsideration, and claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 11 at 91, 106, 171, 172 and 200). On September 5, 2018, an ALJ held a hearing, during which Koukouvitakis, represented by counsel, and an impartial vocational expert testified. (ECF No. 11 at 38-90). On November 29, 2018, the ALJ issued a written decision finding Koukouvitakis

1

was not disabled.  (ECF No. 11 at 20-37).  The ALJ's decision became final on November 6, 2019,

when the Appeals Council declined further review.  (ECF No. 11 at 6).

On December 12, 2019, Koukouvitakis filed his complaint to challenge the

Commissioner's final decision.  (ECF No. 1).  The parties have completed briefing in this case.

(ECF Nos. 12, 15, and 16). Koukouvitakis asserts the following assignments of error:

> (1) The ALJ failed to properly evaluate the evidence in this matter.
>
> (2) The ALJ erred when she failed to properly consider Social Security Ruling 02-1p.
>
> (3) The ALJ did not meet her burden at Step Five of the Sequential Evaluation.

(ECF No. 12 at 1). Within the first issue, claimant asserts that: 1) the ALJ did not give proper

weight to the medical opinions; and 2) that the ALJ's decision is not supported by substantial

evidence because the ALJ failed to properly consider his use of a cane, his sleep apnea, his tinnitus,

and the MRI results in determining that he is able to perform light work.

### III. Background

#### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from claimant's hearing:

> During his hearing, the claimant alleged spine disorders, sleep-related breathing disorders, obesity, essential hypertension, hearing loss not treated with cochlear implantation, anxiety, obsessive-compulsive disorders, and depressive, bipolar, and related disorders resulting in an  inability to work on a regular and continuing basis. The claimant testified his spine disorders, sleep-related breathing disorders, obesity, essential hypertension, and hearing loss not treated with cochlear implantation causes difficulties hearing, standing, and walking.  The claimant further testified he experienced difficulty breathing and pain in his neck, back, and legs.  The claimant alleged his anxiety, obsessive-compulsive disorders, and depressive, bipolar, and related disorders causes difficulties remembering and sleeping.

(ECF No. 11 at 29).

With respect to the vocational expert's testimony, the ALJ summarized:

> To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as bench assembler (Dictionary of Occupational Titles (DOT) Code 706.684-022; light; specific vocational preparation (SVP) 2) with approximately 15,000 jobs nationwide; office cleaner  (DOT  Code  323.687-014; light; SVP 2) with approximately 20,000 jobs nationwide; and mail clerk (DOT  Code  209.687-026; light; SVP 2) with approximately 4,400 jobs nationwide.

(ECF No. 11 at 36).

## B.  Relevant Medical Evidence

The ALJ summarized claimant's health records and symptoms as follows:

> On December 27, 2015, the claimant obtained a computed tomography (CT) scan of his cervical spine, which showed degenerative changes.  Exhibits 1F at 9 and 2F at 8.  On January 18, 2016, the claimant received a magnetic resonance imaging (MRI) scan of his cervical spine that evidenced abnormal straightening of the cervical lordosis. Exhibits 4F at 66 and 11F at 9.  On January 25, 2016, the claimant underwent a MRI scan of his lumbar spine, which evidenced a disc herniation at L4/5.  Exhibits 4F at 65 and 11F at 8.
>
> On February 16, 2016, the claimant obtained an otoscopy that showed  clear  ear  canals  bilaterally.  Immitance  [sic]  testing performed on the same day showed the claimant had low middle ear admittance bilaterally. On the same day, the claimant received behavioral hearing testing which showed mild mixed hearing loss bilaterally.  Exhibit 3F at 8. The evaluator noted the claimant's word recognition scores were excellent bilaterally.  Exhibit 3F at 8.  In August through October of 2017, the claimant received physical therapy for the pain in his lower back. Exhibit 16F at 5.
>
> On September 18, 2017, the claimant reported to an auditory consultative examination with Mark Brigham, D.O.  Exhibit 14F at 2.  The claimant  underwent  a  limited  auditory,  which  showed

bilateral, symmetrical, mild sensorineural hearing loss.  Exhibit 14F at 4.  The claimant evidenced speech thresholds of 30 dB in each ear and word recognition scores of 100% in each ear.  Exhibit 14F at 4.  The claimant's speech could be readily heard from a distance across the room without difficulty.  Exhibit 14F at 4.  Dr. Brigham diagnosed the claimant with bilateral sensorineural hearing loss and tinnitus of the left ear.  Exhibit 14F at 3-4.

On September 20, 2017, the claimant obtained a sleep study, which evidenced very severe obstructive sleep apnea, tachypnea, periodic limb movements, and abnormal sleep architecture. Exhibit 15F at 5-8.  On November 20, 2017, the claimant underwent a MRI scan of his lumbar spine, which showed mild degenerative changes of the lumbar spine with narrowing of the central canal and prominent epidural fat particularly from L3/4 through L5/S1 and paracentral disc protrusion at L4/5.  Exhibits 16F at 3-4, 17F at 1-2, 18F at 1-2, 19F at 2-3, and 20F at 2-4.

On July 9, 2018, the claimant obtained an X-ray scan of his thoracic spine that showed degenerative changes.  Exhibit 26F at 11.  On the same day, the claimant underwent an X-ray scan of his cervical spine that evidenced no abnormal findings.   Exhibit 26F at 12.  On multiple occasions, the claimant received injections for the pain in his low back.  Exhibits 4F at 1, 11F at 62, and 24F at 9 and 11.

[…]

On August 10, 2017, the claimant reported to a psychological consultative examination with Victoria Liao, Psy.D.  Exhibit 13F at 2.  During this examination, the claimant evidenced mostly intact psychological objective findings such as orientation, cooperativeness, and normal speech, thought process, affect, mood, judgment, attention, and concentration.  Exhibit 13F at 4-5.  The claimant was able to recall the name of the current President of the United States, the name of the previous President of the United States, and three objects out of three objects immediately, but only one object out of three objects after a delay.  Exhibit 13F at 5.  The claimant was able to complete serial sevens.  Exhibit 13F at 5.  The claimant reported to the psychological consultative examiner that he could dress, bath, cook, shop, drive, and manage his money. Exhibit 13F at 4.

Moreover, the claimant's psychological examinations show that he is capable of work activity consistent with the above residual functional capacity assessment.  On multiple occasions, the claimant showed mostly intact psychological objective findings such as

alertness, orientation, cooperativeness, and normal mood, affect, concentration, judgment, thought process, and attention span with the exception of anxiousness.  Exhibits 3F at 17, 9F at 3, 7, 10, 15, and 26, l0F at 3, 12F at 35, 13F at 4-5, 24F at 7, 19, 27, and 33, and 26F at 8.  Despite the claimant's allegation that he experiences disabling pain, anxiety, obsessive-compulsive disorders, and depressive, bipolar, and related disorders, on multiple occasions, the claimant was found to be in no distress.  Exhibits 1F at 4, 3F at 5 and 16, SF at 8 and 13, 9F at 3, 7, 10, 14, and 25, l0F at 3, 12F at 2, 5, 8, 13, 16, 19, 23, 29, 32, 35, and 39, 14F at 3, 15F at 2, 4, and 10, and 23F at 3.

Furthermore, there is no evidence of any surgery in the file during the relevant period. There is no evidence in the record during the relevant period of inpatient mental health hospitalizations. Although the claimant sought treatment from a pain management specialist, the claimant's treating pain management specialist recommended the claimant schedule follow up appointments every four to eight weeks suggesting that the claimant's condition did not require specialized acute care examinations. Exhibits 4F, 24F, and 26F. The claimant's treating primary care physicians recommended the claimant schedule follow up appointments every three months suggesting that the claimant's condition did not require acute care examinations. Exhibits 12F and 23F. The claimant admitted to being better with treatment.  Exhibit 3F at 4, 9, and 11, 4F at 23, 32, 37, 41-42, and 64, 15F at 7, 24F at 4, 13, 16, 24, and 30, and 26F at 2 and 5. The claimant's treating physicians noted his condition was stable with treatment.  Exhibits 1F at 5, 2F at 4, and 7F at 20.

The claimant's treating physicians noted his treatment was effective including his medications.  Exhibits 3F at 2, 4F at 21, 28, 32, and 41-42, and 9F at 8.

(ECF No. 11 at 30-32).

### C.  Opinion Evidence

#### 1.  Victoria Liao, August 10, 2017

On August 10, 2017, Koukouvitakis underwent a psychological evaluation by Victoria Liao, Psy.D.. (ECF No. 11 at 724-730). At the conclusion of the evaluation, Liao opined:

1) There are limitations in his ability to  understand, remember, and carry out complex instructions.

2) There are no impairments in the claimant's ability to maintain attention and concentration for simple tasks, impairments for complex tasks, and impairments for tasks requiring the ability to remember information after a delay.

3) There are limitations in his ability to respond appropriately to supervision and to coworkers in a work setting due to mood disturbances.

4) There are limitations in his ability to respond appropriately to work pressures in a work setting due to mood disturbances and difficulty with effectively and consistently managing his psychological symptoms.

(ECF No. 11 at 729).

The ALJ gave some weight to Liao's opinions finding that they are "somewhat consistent with and supported by the medical records as a whole." (ECF No. 11 at 33). The ALJ explained that the medical records mostly show "intact psychological objective findings such as alertness, orientation, cooperativeness, and normal mood, affect, concentration, judgment, thought process, and attention span with the exception of anxiousness." (ECF No. 11 at 34). The ALJ stated that Liao's opinions are somewhat supported by her findings upon examination of Koukouvitakis "which showed mostly intact psychological objective findings such as orientation, cooperativeness, and normal speech, thought process, affect, mood, judgment, attention, and concentration." (ECF No. 11 at 34).

### 2.  Gregory Davis, D.O. – April 23, 2018

On April 23, 2018, Dr. Gregory Davis opined the claimant was unable to work due to his chronic low back pain. (ECF No. 11 at 884.)

The ALJ gave little weight to Davis's opinion stating that Davis "did not provide vocationally relevant limitations and the opinions are inconsistent with and not supported by the medical records as a whole." (ECF No. 11 at 33). Specifically, the ALJ stated:

> The opinion is inconsistent with and not supported by the medical record as a whole mostly  showing intact objective findings such as normal gait, posture, range of motion, sensation,  reflexes, and strength with the exceptions of positive seated leg raise, decreased

sensation in his left leg, decreased strength on his right leg, decreased reflexes in his left knee, antalgic gait, generalized hypertrophy, tenderness in his lumbar spine, and muscle spasms and decreased range of motion in his cervical and lumbar spines. Exhibits 1F at 4, 3F at 17, 4F at 21, 23, 25-26, 41-42, and 46, 5F at 2-3, 8, and 13, 9F at 3, 6, 10, 15, and 26, 15F at 10, 16F at 38-39, 20F at 1 and 7, 24F at 7, 19, 27, and 33, 25F at 4, and 26F at 8. The opinion is not supported by Dr. Davis' findings upon examination of the claimant, which showed mostly intact objective findings such as normal range of motion, sensation, reflexes, and strength with the exceptions of decreased range of motion in his lumbar spine. Exhibits 12F at 2, 5, 8, 13, 16, 19, 23, 32, 35, and 39 and 23F at 3. Finally, the opinion that the claimant was unable to work is an issue reserved for the Commissioner. See 20 C.F.R. 404.1527(d) and 416.927(d).

(ECF No. 11 at 33).

### 3. State Agency Consultants

#### i. Gary Hinzman & Leon Hughes

On September 22, 2017, Gary Hinzman, M.D. reviewed Koukouvitakis's medical records and assessed his physical residual functional capacity. (ECF No. 11 at 103-106). Upon reconsideration, on October 15, 2017, Leon D. Hughes, M.D. also reviewed the medical records and assessed claimant's physical residual functional capacity. (ECF No. 11 at 163-165). Hinzman and Hughes opined that claimant could occasionally lift up to 20 pounds and frequently lift and/carry 10 pounds; sit and/or walk about 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday. They opined that claimant's BMI and spinal issues supported these opinions. Both Hinzman and Hughes opined that claimant could frequently climb ramps/stairs, balance, kneel, crouch, and crawl; but could occasionally stoop and never climb ladders/ropes/scaffolds. These limitations were based on claimant's obesity as well as spinal impairments. Both Hinzman and Hughes opined that Koukouvitakis had limited hearing in both ears due to ringing in both ears and hearing loss. Both opined that claimant should avoid excessive

concentrated noise due to the ringing in his ears, but that he is able to hear alarms, sirens and normal conversation.

The ALJ gave partial weight to the opinions of Hinzman and Hughes explaining that they are "somewhat consistent with and supported by the record as a whole." (ECF No. 11 at 33). The ALJ explained that the medical records show "mostly intact objective findings such as normal gait, posture, range of motion, sensation, reflexes, and strength with the exceptions of positive seated leg raise, decreased sensation in his left leg, decreased strength on his right leg, decreased reflexes in his left knee, antalgic gait, generalized hypertrophy, tenderness in his lumbar spine, and muscle spasms and decreased range of motion in his cervical and lumbar spines." (ECF No. 11 at 33 citing Exhibits lF at 4, 3F at 17, 4F at 21, 23, 25-26, 41-42, and 46, 5F at 2-3, 8, and 13, 9F at 3, 6, 10, 15, and 26, 12F at 2, 5, 8, 13, 16, 19, 23, 32, 35, and 39, 15F at 10, 16F at 38-39, 20F at 1 and 7, 23F at 3, 24F at 7, 19, 27, and 33, 25F at 4, and 26F at 8). The ALJ further recognized that neither Hinzman nor Hughes had the opportunity to examine the claimant, but that both had "reviewed all of the claimant's medical records at the time of their opinions, have specific program knowledge, and are experts in this field." (ECF No. 11 at 33).

### ii. Kristen Haskins, Psy.D. – August 22, 2017 & Jaime Lai, Psy.D – October 13, 2017

On August 22, 2017, Kristen Haskins, Psy.D., performed an initial psychiatric review of the claimant's medical records and provided an assessment of claimant's mental residual functional capacity. (ECF No. 11 at 101-102, 106-108). On October 13, 2-17, upon reconsideration, Jaime Lai, Psy.D, reviewed claimant's records and provided an assessment of his mental residual functional capacity. (ECF No. 11 at 141-142, 146-148, 161-162, 165-167). Both Haskins and Lai opined the claimant was moderately limited in his ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and

adapt or manage himself. Both Haskins and Lai explained that claimant could: understand and remember one to three step tasks; complete short cycle tasks in a setting without fast pace demand; superficially engage with others; work within a set routine where major changes are explained in advance and gradually implemented to allow him time to adjust to the new expectations. Both opined that the claimant's ability to handle stress and pressure in the workplace would be reduced but adequate to handle tasks without strict time limitations or production standards.

The ALJ gave partial weight to Haskins and Lai's opinions finding that they are "somewhat consistent with and supported by the record as a whole" while recognizing they had not examined the claimant, but had reviewed all claimant's medical records available at the time of their opinions, they have specific program knowledge and are experts in this field. (ECF No. 11 at 34). The ALJ explained that "[t]hese opinions are somewhat consistent with and supported by the record as a whole showing mostly intact psychological objective findings such as alertness, orientation, cooperativeness, and normal mood, affect, concentration, judgment, thought process, and attention span with the exception of anxiousness." (ECF No. 11 at 34).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: spine disorders, sleep-related breathing disorders, obesity, essential hypertension, hearing loss not treated with cochlear implantation, anxiety, obsessive-compulsive disorders, and depressive, bipolar, and related disorders (20 CFR 404.1520(c) and 416.920(c)).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk six hours during an eight-hour workday and sit six hours during an eight-hour workday. He can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently balance, kneel,

9

crouch, or crawl. He can occasionally stoop. The claimant must avoid concentrated exposure to noise. He can have frequent exposure to fumes, odors, dusts, gases, and poor ventilation. The claimant can never be exposed to unprotected heights and dangerous machinery. He is limited to performing simple, routine tasks, but not at a production rate pace. The claimant can occasionally interact with supervisors, co-workers, and the [public]. He is limited to routine workplace changes.

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from December 23, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be

affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B. Discussion

### 1. Substantial evidence supports the ALJ's finding the claimant could perform light work.

#### a. Medical opinions[1]

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c)(1) through (c)(5). *Jones v. Comm'r of Soc. Sec.*, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020) (quoting *Gower v. Saul*, 2020 WL 115169, at * 4 (W.D. Ky, March 9, 2020) (citing 20 C.F.R. § 404.1520c(a) and (b)); *see also Ryan L. F. v. Comm'r of Soc. Sec.*, 2019 WL 6468560, at *4 (D.

---

[1] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

Or. Dec. 2, 2019) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'") (citing 20 C.F.R. §§ 404.1520c(a) and (b) (1), 416.920c(a) and (b) (1)) (alterations in original)). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").[2]

Here, claimant objects to the weight given by the ALJ to the various medical opinions and, generally, that none of the opinions support the ALJ's finding that he is able to perform light work. As an initial matter, other than Davis's opinion – which did not include any functional limitations or reference to medical support – no opinions indicate that claimant's mental or physical limitations prevent him from performing limited light work.

Specifically, Liao's opinion noted general mental limitations but did not contain any functional assessment. Hinzman and Hughes opined that claimant could occasionally lift up to 20 pounds and frequently lift and/carry 10 pounds; sit and/or walk about 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; frequently climb ramps/stairs, balance, kneel, crouch, and crawl; and occasionally stoop and never climb ladders/ropes/scaffolds. They also opined that claimant had limited hearing in both ears due to ringing in both ears and hearing

---

[2] Claimant erroneously cites to the previous regulation at 20 C.F.R. § 416.927 for his argument that the ALJ was required to "give greater weight to treating source opinions, some weight to non-treating source opinions and to fully explain why any medical source is rejected." (ECF No. 12 at 18).

loss and recommended that claimant avoid excessive concentrated noise due to the ringing in his ears but that he is able to hear alarms, sirens and normal conversation. Finally, both Haskins and Lai opined that although claimant was moderately limited in his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself, he could understand and remember one to three step tasks; complete short cycle tasks in a setting without fast pace demand; superficially engage with others; work within a set routine where major changes are explained in advance and gradually implemented to allow him time to adjust to the new expectations; and that although his ability to handle stress and pressure in the workplace would be reduced, he would be able to handle tasks without strict time limitations or production standards.

Accordingly, the opinions support that claimant can perform limited light work.

### i.     Dr. Liao

Claimant argues that the ALJ erred by failing to give Liao's opinions more than some weight. (ECF No. 12 at 16). He also argues that the ALJ failed to recognize Liao's notations regarding his anxiety. Liao opined the claimant would have limitations in his abilities to respond appropriately to work pressures in a work setting. (ECF No. 11 at 729). The ALJ found this opinion was "supported by the medical record as a whole mostly showing intact psychological objective findings such as alertness, orientation, cooperativeness, and normal mood, affect, concentration, judgment, thought process, and attention span *with the exception of anxiousness*." (ECF No. 11 at 33-34).   Contrary to claimant's assertion, the ALJ did not fail to acknowledge his anxiety. Moreover, Liao's opinion did not contain any functional limitations, including any relating to claimant's anxiety, for the ALJ to consider.

The ALJ sufficiently explained her reasons for giving Liao's opinions "some weight":

I give some weight to the opinions of the psychological consultative examiner, Dr. Liao because the opinions are somewhat consistent with and supported by the medical records as a whole.

Exhibit 13F at 6-7. Dr. Liao opined the claimant could perform simple tasks and multi-step tasks.   Exhibit 13F at 6-7.  Dr. Liao further opined the claimant could maintain attention, concentration, persistence, and pace. Exhibit 13F at 7.  Dr. Liao opined the claimant would have limitations in his abilities to respond appropriately to supervision and coworkers in a work setting.  Exhibit 13F at 7.  Dr. Liao further opined the claimant would have limitations in his abilities to respond appropriately to work pressures in a work setting. Exhibit 13F at 7. The opinion is somewhat consistent with and supported by the medical record as a whole mostly showing intact psychological objective findings such as alertness, orientation, cooperativeness, and normal mood, affect, concentration, judgment, thought process, and attention span with the exception of anxiousness.   Exhibits 3F at 17, 9F at 3, 7, 10, 15, and 26, 10F at 3, 12F at 35, 24F at 7, 19, 27, and 33, and 26F at 8. The opinions are somewhat supported by Dr. Liao's findings upon examination of the claimant, which showed mostly intact psychological objective findings such as orientation, cooperativeness, and normal speech, thought process, affect, mood, judgment, attention, and concentration.  Exhibit 13F at 4-5.

(ECF No. 11 at 33-34). Thus, the ALJ properly explained how she considered the supportability and consistency of Liao's medical opinions.

### ii.      Dr. Davis

Claimant argues that the ALJ erred by giving little weight Davis's opinion regarding claimant's inability to return to work due to chronic low back pain. (ECF No. 12 at 16).[3] In giving this opinion little weight, the ALJ explained:

I give little weight to the opinion of the claimant's treating physician, Gregory James Davis, D.O. because Dr. Davis did not provide vocationally relevant limitations and the opinions are inconsistent with and not supported by the medical records as a whole.  Exhibit 21F at 1.  Dr. Davis opined the claimant was unable to work due to

---

[3] Claimant's brief misstates Davis's opinion to include that he could not return to work due to chronic low back pain *and left lower extremity radiculopathy*. The opinion merely states "chronic low back pain." (ECF No. 11 at 884).

> his chronic low back pain. Exhibit 21F at 1. The opinion is inconsistent with and not supported by the medical record as a whole mostly showing intact objective findings such as normal gait, posture, range of motion, sensation,  reflexes, and strength with the exceptions of positive seated leg raise, decreased sensation in his left leg, decreased strength on his right leg, decreased reflexes in his left knee, antalgic gait,  generalized hypertrophy, tenderness in his lumbar spine, and muscle spasms and decreased range of  motion in his cervical and lumbar spines.  Exhibits  1F  at 4, 3F at 17, 4F at 21, 23, 25-26, 41-  42, and 46, 5F at 2-3, 8, and 13, 9F at 3, 6, 10, 15, and 26, 15F at 10, 16F at 38-39, 20F at 1 and  7, 24F at 7, 19, 27, and 33, 25F at 4, and 26F at 8.  The opinion is not supported by Dr. Davis' findings upon examination of the claimant, which showed mostly intact objective findings such as normal range of motion, sensation, reflexes, and strength with the exceptions of decreased range of motion in his lumbar spine.  Exhibits 12F at 2, 5, 8, 13, 16, 19, 23, 32, 35, and 39 and 23F at 3. **Finally, the opinion that the claimant was unable to work is an issue reserved for the Commissioner. See 20 C.F.R. 404.1527(d) and 416.927(d).**

(ECF No. 11 at 33) (emphasis added). Here, the ALJ properly explained how she considered the supportability and consistency of Davis's medical opinion.

Moreover, "a treating physician's opinion is only entitled to such ... deference when it is a medical opinion." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) (quoting *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x. 488, 492–93 (6th Cir. 2010)). "If the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors—'[the ALJ's] decision need only 'explain the consideration given to the treating source's opinion.' " *Id*. (quoting *Turner*, 381 F. App'x. at 493 (quoting SSR 96–5p, 61 Fed. Reg.  34474)). "The  opinion,  however, 'is  not  entitled  to  any  particular weight.'" *Id*. (quoting *Turner*, 381 Fed. Appx. at 493). Here, Davis's opinion contained more than a medical opinion since he opined that claimant was unable to return to work. Accordingly, Davis's

opinion is a conclusion for the ALJ to determine and is not a proper medical opinion entitled to particular weight. *See* 20 C.F.R. § 404.1527(d); *Johnson*, 535 F. App'x at 505. [4]

### iii.  State Agency psychologists, Drs. Haskins and Lai

With respect to the opinions of Haskins and Lai, the State Agency psychologists, claimant argues that the ALJ's determination to give them partial weight as they were "somewhat consistent with and supported by the record as a whole showing mostly intact psychological objective findings" contradicts her finding that claimant had a moderate to marked limitation in understanding, remembering, or applying information, which indicates she gave the opinions great weight. (ECF No. 12 at 15). The government responds that it is apparent that the ALJ intended to give these opinions great weight – as the mental RFC finding mostly tracked their opinions – but that there is no harm in the ALJ stating "partial weight" was given instead of "great weight" because the ALJ included a limitation in the RFC for simple routine tasks at a non-production rate pace, consistent with the opinions of Haskins and Liao. (ECF No. 15 at 8). Claimant replies that "if [he] had a marked limitation in understanding, remembering or applying information, even simple routine work may have been precluded" and that failure to include this limitation in the hypothetical to the vocational expert constitutes reversible error. (ECF No. 16 at 2-3).

When evaluating whether claimant's mental impairments qualified him for disability under a Listing 12.02 or 12.06, the ALJ found that "claimant has a moderate to marked limitation in understanding, remembering, or applying information." (ECF No. 11 at 27). The ALJ determined that the listing's "paragraph B" criteria were not met because claimant's mental impairments do

---

[4] Although the ALJ, as well as the cases cited above, cites to the treating source rule factors for claims filed prior to March 27, 2017, there is no indication in the new regulations, which offer guidance for evaluating *medical* opinions, altered the long-standing definition of a medical opinion or the prerogatives of the Commissioner whose ultimate decision it is to determine whether a claimant is able to work.

not cause at least two "marked" limitations or one "extreme" limitation. (ECF No. 11 at 28). Although the ALJ found, at Step Two, that claimant had "moderate to marked" limitation in understanding, remembering, or applying information, that does not require her to mirror that finding at Step Four. *See Koster v. Colvin*, 1:13CV2719, 2015 WL 413795, at *5 (N.D. Ohio Jan. 30, 2015) ("The Social Security Administration has long distinguished between findings of limitations under the Paragraph B criteria and those included in an RFC assessment."); *see also* SSR 96-8p ("The adjudicator must remember that the limitations identified in the "paragraph B" … criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). Claimant does not offer any authority to the contrary.

Moreover, Haskins and Liao's opinions support the ALJ's mental RFC determination. In both opinions, the psychologists determined that the claimant was moderately limited in his ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. Both Haskins and Lai explained that claimant could: understand and remember one to three step tasks; complete short cycle tasks in a setting without fast pace demand; superficially engage with others; work within a set routine where major changes are explained in advance and gradually implemented to allow him time to adjust to the new expectations. Both opined that the claimant's ability to handle stress and pressure in the workplace would be reduced but adequate to handle tasks without strict time limitations or production standards. The ALJ's limitations reflect the limitations included by Haskins's and Liao's opinions.

The mental portion of the RFC closely tracks the opinions of Haskins and Liao and includes limitations supported by their opinions. However, even if the ALJ failed to include a particular limitation included in those opinions, claimant has not shown error. *See Selzer v. Comm'r of Soc.*

17

*Sec.,* 1:16 CV 276, 2016 WL 11264703, at *4 (N.D. Ohio Dec. 20, 2016) (Even when an ALJ gives an opinion great weight, she is not required to include each finding and every limitation from that opinion in the RFC.). Here, the opinions do not show that the ALJ blatantly ignored marked limitations in claimant's ability to understand, remember, or apply information. Rather, at best, the opinion evidence is that Koukouvitakis was found to be moderately limited in some aspects of this area, but able to complete short cycle tasks in a setting without fast pace demand and understand and remember 1-3 step tasks.

Substantial evidence from the entire record supports the mental limitations that the ALJ included in her hypothetical questions to the vocational expert. Accordingly, and for the reasons stated above, I recommend finding that the decision by the ALJ in this case to fashion the RFC as she did was supported by the law and substantial evidence.

### b.  Substantial evidence supports the ALJ's findings.

In addition to challenging the ALJ's decision regarding the weights given to the medical opinions, Koukouvitakis asserts that the ALJ failed to consider his use of a cane, tinnitus, and "severe obstructive sleep apnea" and only briefly discussed the MRI results when determining that Koukouvitakis could perform light work. (ECF No. 12 at 16, 17).

As an initial matter, an ALJ need not address every piece of evidence before it when making a decision. *See Boseley v. Comm'r of Soc. Sec.*, 397 Fed. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."). Here, the ALJ considered the record as a whole in finding that claimant was not as impaired as alleged. (ECF No. 11 at 29-35). Thus, the ALJ's analysis was supported by substantial evidence.

Additionally, claimant's specific attacks fail. First, claimant argues that the ALJ failed to

consider his use of a cane in her RFC determination.[5] Claimant's brief, however, does not address Social Security Ruling 96-9p ("SSR 96-9p"), which, requires clear medical evidence before the need for a cane may be incorporated into an RFC. SSR 96-9p, 1996 WL 374185 (Jul. 2, 1996), provides as follows:

> Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p. Here, the only evidence of Koukouvitakis's use of a cane is his own testimony and presence at the oral hearing. However, a plaintiff's testimony alone is insufficient under SSR 96-9p. *Meadows v. Comm'r of Soc. Sec.*, No. 5:18CV1024, 2019 WL 4736484, at *12, n.6 (N.D. Ohio Sept. 27, 2019); s*ee, e.g., Mitchell v. Comm'r of Soc. Sec.*, No. 4:13cv1969, 2014 WL 3738270 (N.D. Ohio Jul. 29, 2014) (finding that Plaintiff's testimony did not qualify as "medical documentation establishing the need" for the cane under SSR 96-9p) (Pearson, J.); *Smith v. Astrue*, No. 2:11-0065, 2012 WL 4329007 at *8 (M.D. Tenn. July 16, 2012), report and recommendation adopted, 2012 WL 4328993 (M.D. Tenn. Sept. 20, 2012) ("Even if the ALJ had not discussed the use of the cane, Plaintiff failed to provide medical documentation of its requirement. The only

---

[5] Because of the brevity of claimant's argument regarding his use of the cane, it is unclear exactly with what he takes issue. To the extent he believes that the ALJ's hypothetical to the vocational expert was insufficient in that it failed to include his use of a cane, it is "well established that an ALJ ... is required to incorporate only those limitations accepted as credible by the finder of fact" into the hypothetical question. *Casey v. Sec 'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

evidence supporting a cane requirement comes from Plaintiff's testimony."). Accordingly, the ALJ did not err by omitting discussion of a cane.

Second, Koukouvitakis argues that the ALJ failed to address the issue of his tinnitus. He notes that he constantly watched television to drown out the ringing in his ear and also attended a consultative examination where he was diagnosed with bilateral sensorineural hearing loss and tinnitus in the left ear and that the ALJ ignored this evidence is reaching her conclusion. With respect to Koukouvitakis's hearing issues, the ALJ stated:

> On February 16, 2016, the claimant obtained an otoscopy that showed clear ear canals bilaterally. Immitance [sic] testing performed on the same day showed the claimant had low middle ear admittance bilaterally. On the same day, the claimant received behavioral hearing testing which showed mild mixed hearing loss bilaterally. Exhibit 3F at 8. The evaluator noted the claimant's word recognition scores were excellent bilaterally. Exhibit 3F at 8. In August through October of 2017, the claimant received physical therapy for the pain in his lower back. Exhibit 16F at 5.

> On September 18, 2017, the claimant reported to an auditory consultative examination with Mark Brigham, D.O. Exhibit 14F at 2. The claimant underwent a limited auditory, which showed bilateral, symmetrical, mild sensorineural hearing loss. Exhibit 14F at 4. The claimant evidenced speech thresholds of 30 dB in each ear and word recognition scores of 100% in each ear. Exhibit 14F at 4. The claimant's speech could be readily heard from a distance across the room without difficulty. Exhibit 14F at 4. Dr. Brigham diagnosed the claimant with bilateral sensorineural hearing loss and tinnitus of the left ear. Exhibit 14F at 3-4.

(ECF No. 11 at 30). The ALJ found that claimant's asserted limitations were not consistent with the medical record. (ECF No. 11 at 32). Accordingly, the claimant's assertion that the ALJ ignored claimant's tinnitus and hearing loss is factually incorrect.

Third, claimant states that "[t]he ALJ also minimalized Koukouvitakis' very severe obstructive sleep apnea (as documented by polysomnogram at Tr. 736-739) in combination with his obesity (Tr. 25)." No further explanation was provided. However, the ALJ did not minimize it,

but, rather, acknowledged that it was *very severe* sleep apnea. (ECF No. 11 at 30). Accordingly, claimant's argument here is not well taken.

Finally, claimant believes that the ALJ did not properly consider his MRIs, which "demonstrated, among other findings, disc herniations/bulges at L4/5." (ECF No. 12 at 16). However, the government accurately points out that the ALJ addressed the MRIs *and additional evidence of his spinal issues* numerous times:

> On January 18, 2016, the claimant received a magnetic resonance imaging (MRI) scan of his cervical spine that evidenced abnormal straightening of the cervical lordosis.
>
> Exhibits 4F at 66 and 11F at 9.  On January 25, 2016, the claimant underwent a MRI scan of his lumbar spine, which evidenced a disc herniation at L4/5.  Exhibits 4F at 65 and 11F at 8.

(ECF No. 11 at 30).

> On November 20, 2017, the claimant underwent a MRI scan of his lumbar spine, which showed mild degenerative changes of the lumbar spine with narrowing of the central canal and prominent epidural fat particularly from L3/4 through L5/S1 and paracentral disc protrusion at L4/5. Exhibits 16F at 3-4, 17F at 1-2, 18F at 1-2, 19F at 2-3, and 20F at 2-4.
>
> On July 9, 2018, the claimant obtained an X-ray scan of his thoracic spine that showed degenerative changes.  Exhibit 26F at 11.  On the same day, the claimant underwent an X-ray scan of his cervical spine that evidenced no abnormal findings.  Exhibit 26F at 12.  On multiple occasions, the claimant received injections for the pain in his low back.  Exhibits 4F at 1, 11F at 62, and 24F at 9 and 11.

(ECF No. 11 at 30-31).

> On multiple occasions, the  claimant showed mostly intact objective findings such as normal gait, posture, range of motion,  sensation, reflexes, and strength with the exceptions of positive seated leg raise, decreased  sensation in his left leg, decreased strength on his right leg, decreased reflexes in his left knee, antalgic gait, generalized hypertrophy, tenderness in his lumbar spine, and muscle spasms and  decreased range of motion in his cervical and lumbar spines. Exhibits 1F  at 4, 3F at 17, 4F at  21, 23, 25-26, 41-42, and

46, SF at 2-3, 8, and 13, 9F at 3, 6, 10, 15, and 26, 12F at 2, 5, 8, 13, 16, 19, 23, 32, 35, and 39, 15F at 10, 16F at 38-39, 20F at 1 and 7, 23F at 3, 24F at 7, 19, 27, and  33, 25F at 4, and 26F at 8.

(ECF No. 11 at 31).   Here, the MRI of claimant's lumbar spine showed a herniated disc at L4-5 with otherwise normal results, i.e.: vertebral bodies were well-maintained in vertical height with normal signal characteristics on T1 and T2; no evidence of prevertebral or paravertebral soft tissue swelling; no evidence of soft tissue hematoma or soft tissue mass; free flow of nerve roots; and no foraminal compromise at L4/5. (ECF No. 11 at 434). The MRI of his cervical spine showed abnormal straightening of the cervical lordosis with otherwise normal results, i.e. heights of the cervical vertebral bodies were maintained; craniocervical junction and atlantoaxial articulation were normal; no evidence of herniated disc or nerve root encroachment; no spinal stenosis or foraminal stenosis; and no intraspinal mass lesions were identified. (ECF No. 11 at 435). Koukouvitakis testified at the hearing that he could only stand for a few minutes and it was easier to walk then stand. (ECF No. 11 at 56). He argues that this was corroborated at the hour-long hearing when he had to get up several times and move around the room. (ECF No. 12 at 14). The ALJ considered his testimony in her decision and found that the medical evidence did not support as extensive of limitations as claimant suggested. Instead, the ALJ determined that he could stand and/or walk six hours during an eight-hour workday and sit six hours during an eight-hour workday based on the record as a whole.  Accordingly, the ALJ thoroughly discussed the MRIs and did not err in declining to discuss them further.

In summation, the ALJ considered the record as a whole in finding that claimant was capable of performing light work. Claimant's assertions that the ALJ's decision is contradictory and unsupported have no merit. The ALJ's analysis was supported by substantial evidence.

### 2.   The ALJ properly considered SSR 02-1p.

SSR 02-1p directs the ALJ to assess the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p at *6; *see also Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x. 956, 959 (6th Cir. 2015). An ALJ must "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02–1P, 2002 WL 34686281, at *2. "It must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity,' precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" *Shilo*, 600 F. App'x at 959–60 (quoting SSR 02–1p, 2002 WL 34686281, at *1). "The ALJ is not required to use any 'particular mode of analysis' in assessing the effect of obesity." *Id.* (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006)).

 "The Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss." SSR 02–1P, 2002 WL 34686281, at *2.

"SSR 02–1P offers detailed guidance on how to assess obesity in conjunction with other impairments." *Id.* (citing *Norman v. Astrue*, 694 F.Supp.2d 738, 741–42 (N.D. Ohio 2010) ("this is more than a requirement that the ALJ mention the fact of obesity in passing ...")). Obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory,

23

and musculoskeletal body systems." *Id*. at *3. "The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." *Id*. at *6. The ALJ also must specifically take into account "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment," and consider how "fatigue may affect the individual's physical and mental ability to sustain work activity"—especially in "cases involving sleep apnea." *Id*. at *6.

Here, claimant acknowledges that the ALJ considered his obesity, but argues that she "failed to assess it in light of the relationship between his obesity and his musculoskeletal and respiratory problems." (ECF No. 12 at 20). In response, the government directs the court to the numerous times that the ALJ specifically mentions claimant's obesity in connection with his impairments.

Substantial evidence supports a finding that the ALJ properly considered claimant's obesity in connection with his impairments in accordance with SSR 02-1p. For example, the ALJ considered claimant's own statements regarding his obesity:

> During his hearing, the claimant alleged spine disorders, sleep-related breathing disorders, obesity, essential hypertension, hearing loss not treated with cochlear implantation, anxiety, obsessive-compulsive disorders, and depressive, bipolar, and related disorders resulting in an inability to work on a regular and continuing basis. The claimant testified his spine disorders, sleep-related breathing disorders, obesity, essential hypertension, and hearing loss not treated with cochlear implantation causes difficulties hearing, standing, and walking. The claimant further testified he experienced difficulty breathing and pain in his neck, back, and legs. The claimant alleged his anxiety, obsessive-compulsive disorders, and depressive, bipolar, and related disorders causes difficulties remembering and sleeping.

24

(ECF No. 11 at 29). After considering each of the claimant's impairments, including his obesity, the ALJ determined that the medical records are consistent with the limitations provided in the RFC. (ECF No. 11 at 30 ("As for the claimant's statements about the intensity, persistence, and limiting effects of his  spine disorders, sleep-related breathing disorders, obesity, essential hypertension, hearing loss  not treated with cochlear implantation, anxiety, obsessive-compulsive disorders, and depressive,  bipolar, and related disorders, the objective findings in the file and the claimant's treatment   history are consistent with the residual functional capacity assessment provided above.")). The ALJ further explained that the RFC is consistent with objective findings in the file and the claimant's treatment history relating to his "spine disorders, sleep-related breathing disorders, obesity, essential hypertension, and hearing loss not treated with cochlear implantation[.]" (ECF No. 11 at 30). The ALJ also explicitly stated that his physical impairments are "compounded by his obesity." (ECF No. 11 at 31). Specifically, the ALJ explained that "[b]ecause the claimant is 5 feet and 11 inches tall, weighs about 350 pounds, and has a body mass index (BMI) over 30, he is considered 'obese.'  Exhibits 3F at 16, 4F at 21, SF at  13, 9F at 2, 6, 10, 14, and 25, 10F at 2, 12F at 2 and 39, 15F at 2-3 and 9, 23F at 3, 24F at 6, 18, 26, and 32, and 26F at 8." (ECF No. 11 at 31). And that "[i]n accordance with SSR 02-lp, obesity is considered a severe impairment, and I considered it in evaluating the claimant's above residual functional capacity assessment." (ECF No. 11 at 31).

Moreover, the ALJ included limitations based on her consideration of claimant's obesity in combination with his other impairments:

> As such, the claimant's alleged limitations from his spine disorders, sleep-related breathing disorders, obesity, essential hypertension, hearing loss not treated with cochlear implantation, anxiety, obsessive-compulsive disorders, and depressive, bipolar, and related disorders are not wholly consistent with the medical evidence.  The restrictions to his exposure to noise, pulmonary irritants, heights,

> and machinery and the limitations to his abilities to lift, carry, push, pull, climb, and perform postural activities are provided for the claimant's spine disorders, sleep-related breathing disorders, obesity, essential hypertension, and hearing loss not treated with cochlear implantation. The limitations to his abilities to interact with others, adapt to changes, and perform tasks are provided for the claimant's anxiety, obsessive-compulsive disorders, and depressive, bipolar, and related disorders.

(ECF No. 11 at 32); (*see also* ECF No. 11 at 34 ("In sum, the restrictions to his exposure to noise, pulmonary irritants, heights, and machinery and the limitations to his abilities to lift, carry, push, pull, climb, and perform postural activities are provided for the claimant's spine disorders, sleep-related breathing disorders, obesity, essential hypertension, and hearing loss not treated with cochlear implantation. The limitations to his abilities to interact with others, adapt to changes, and perform tasks are provided for the claimant's anxiety, obsessive-compulsive disorders, and depressive, bipolar, and related disorders.")). The ALJ also considered state agency reviewing source opinions that considered claimant's obesity and its effect on his RFC. (ECF No. 11 at 29, 103-104, 106); c*f. Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010). Claimant counters by citing to *Muhammad v. Berryhill* where the court found that the ALJ failed to consider plaintiff's obesity at each step of the sequential evaluation and remanded for proper consideration pursuant to SSR 02–01p. No. 5:16CV02286, 2017 WL 4083151, at *12 (N.D. Ohio July 7, 2017), report and recommendation adopted sub nom. *Muhammad v. Comm'r of Soc. Sec.*, No. 16 CV 2286, 2017 WL 4077190 (N.D. Ohio Sept. 14, 2017). However, the ALJ's analysis here tracks with that in *Coldiron*. In addition to relying on the physician opinions there are several reasons why the ALJ properly considered the effect obesity had on the claimant's ability to work— namely, the ALJ discussed obesity multiple times throughout her findings of fact: she determined that the claimant appeared to limited by obesity; she concluded that the claimant's obesity was a severe impairment which compounded his physical condition; and each physician on whose

opinion the ALJ relied acknowledged the claimant's obesity (ECF No. 11 at 31 (citing Exhibits 3F at 16, 4F at 21, 5F at 13, 9F at 2, 6, 10, 14, and 25, 10F at 2, 12F at 2 and 39, 15F at 2-3 and 9, 23F at 3, 24F at 6, 18, 26, and 32, and 26F at 8.)).  Additionally, unlike here, the ALJ in *Muhammad* did not explicitly state that he had considered plaintiff's obesity in connection with his other impairments. Instead, the ALJ in *Muhammad* wrote that "[The Appeals Council] also ordered the undersigned ... to evaluate the claimant's obesity under Social Security Ruling 02–1p." 2017 WL 4083151, at *11. The undersigned finds little support for claimant's position in relying on *Muhammad*.

Accordingly, the ALJ properly considered claimant's obesity in accordance with SSR 02-1p.

### 3.  Step Five

The Commissioner has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 391 (6th Cir. 1999). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation marks and citation omitted). "This substantial evidence may be in the form of vocational expert testimony in response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Baker v. Barnhart*, 182 F. App'x 497, 500 (6th Cir. 2006) (citations and internal quotation marks omitted). The Commissioner met this burden through the testimony of the vocational expert, who testified that work exists in the national economy that accommodates Koukouvitakis's RFC and vocational factors. Therefore, the ALJ found that he is not disabled.

Claimant raises two objections to the ALJ's determination at Step Five. First, claimant states that "the ALJ disregarded any objective or subjective evidence which would have resulted in a finding of disabled." (ECF No. 12 at 22). The government argues that claimant is merely recycling his argument made in the earlier issues on appeal. (ECF No. 15 at 16). The Court agrees with the government's position and finds that claimant's argument fails for the reasons set forth above.

Second, claimant declares fault with the ALJ's determination based on the vocational expert's testimony. The government argues that that ALJ "properly relied on vocational expert testimony that an individual with Claimant's background could perform jobs widely available in the national economy." (ECF No. 15 at 16). Substantial evidence in the record supports the ALJ's determination.

During the hearing, the ALJ posed the following hypothetical:

> [ALJ:] please assume an individual of claimant's age, education, and work experience. And for this hypothetical individual if you can please assume that this individual can perform the full range of light work.  Frequently climb ramps and stairs. Never climb ladders, ropes, and scaffolds. Frequently balance. Occasionally stoop. Frequently kneel, crouch, and crawl.  This individual should avoid concentrated noise. This individual should have only frequent exposure to fumes, odors, dust, gas, poor ventilation. This hypothetical individual should never be exposed to unprotected heights and dangerous machinery and is limited to perform simple routine tasks but not at a production rate pace, have occasional interactions with supervisors, coworkers, and the public.  And is limited to routine workplace changes.  With these limitations, can you please advise would such an individual be able to perform claimant's past work.

(ECF No. 11 at 79-80). The vocational expert opined that although such a person would not be able to perform claimant's past work, such a person would be able to perform light jobs such as bench assembler, office cleaner, or mail clerk. (ECF No. 11 at 80-82). Claimant's counsel asked

28

whether there would be jobs for the person in the ALJ's hypothetical if such person required the use of a cane in their dominant hand. (ECF No. 11 at 83). The vocational expert responded that no jobs would be available in the light category, but that the cane would not preclude sedentary work such as a polisher, mailing house worker, or document preparer. (ECF No. 11 at 83-85). Claimant's attorney then added a limitation to the ALJ's hypothetical that the person could only sit for 30 minutes before he needed to move around for three minutes, or about 10 percent of the day. (ECF No. 11 at 86). The vocational expert testified that there would be jobs for a such a person but that if the off-task percentage increased to 20 percent or more there would be no jobs available. (ECF No. 11 at 87).

As discussed above, substantial evidence supports the ALJ's RFC determination. And the hypothetical posed by the ALJ to the vocational expert properly included claimant's limitations supported by the record. Although claimant's attorney raised with the vocational expert additional limitations pertaining to the ALJ's hypothetical, the ALJ properly concluded that these limitations – i.e. the use of a cane and being off-task 20 percent of the time or more – did not apply to claimant. The vocational expert testified at claimant's hearing that there were approximately 39,400 jobs nationwide available to someone with Koukouvitakis's vocational profile, including the restrictions the ALJ found supported by the record as a whole. (ECF No. 11 at 81-82).

Accordingly, the hypothetical question accurately portrayed claimant's individual physical and mental impairments; thus, substantial evidence supports the ALJ's finding that work is available in the economy that the claimant can perform. *Baker*, 182 F. App'x at 500.

## VI. Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision be AFFIRMED.

DATED: 11/24/2020

__*Carmen E. Henderson*_____
Carmen E. Henderson
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas* v. *Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).