UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOS KOUKOUVITAKIS, | ) | Case No. 1:19-cv-02875 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Carmen E. Henderson |
| ANDREW SAUL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION AND ORDER**

Plaintiff Christos Koukouvitakis applied for disability insurance and supplemental security income benefits. The Commissioner denied his applications, both initially and after reconsideration. Plaintiff requested a hearing, after which the administrative law judge also denied his application. He appealed but the appellate council declined review, rendering final the Commissioner's denial. Plaintiff then sought review in federal court. The Magistrate Judge recommends affirming the Commissioner's decision, and Plaintiff objects to that recommendation.

For the reasons that follow, the Court **OVERRULES** Plaintiff's objections (ECF No. 20), **ADOPTS** the Report and Recommendation (ECF No. 18), and **AFFIRMS** the Commissioner's denial of Plaintiff's application for disability insurance benefits and supplemental security income.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mr. Koukouvitakis applied for disability benefits and supplemental security income under Titles II and XVI of the Social Security Act. (ECF No. 11, PageID #303.)

1

He claimed that as of December 23, 2017 he was disabled due to several physical and mental conditions, including back and neck pain, breathing problems, and depression. (*Id.*, PageID #324–25.) The Commissioner denied his application initially and upon reconsideration. (*Id.*, PageID #234, 243, 252 and 259.) Plaintiff requested a hearing before an administrative law judge, who also denied his application. (*Id.*, PageID #79, 264.)

A.  **Administrative Law Judge's Decision**

After hearing testimony from Mr. Koukouvitakis and a vocational expert and considering the evidence presented, an administrative law judge issued a written decision denying Mr. Koukouvitakis' application. (ECF No. 11, PageID # 83.) In that decision, the ALJ outlined and conducted the customary five-step inquiry to determine whether Mr. Koukouvitakis was disabled under Section 1614(a)(3)(A) of the Social Security Act. (ECF No. 11, PageID #95, 102–49.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 23, 2015. (ECF No. 11, PageID #84.) At step two, the ALJ found that Mr. Koukouvitakis had several severe impairments, including spine disorders, sleep-related breathing disorders, obesity, essential hypertension, hearing loss not treated with cochlear implantation, anxiety, obsessive-compulsive disorders, and depressive, bipolar, and related disorders. (*Id.*) The ALJ also found that Plaintiff had hypertensive heart disease, ulceration of the tongue, and mild osteoarthritis of the knees; because these conditions were treated and controlled or asymptomatic, however, the ALJ found that they did not pose more than minimal

2

work-related functional limitations. (*Id.*, PageID #85.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, app. 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id.*)

As to step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work, with several exceptions:

> [H]e can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk six hours during an eight-hour workday and sit six hours during an eight-hour workday. He can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently balance, kneel, crouch, or crawl. He can occasionally stoop. The claimant must avoid concentrated exposure to noise. He can have frequent exposure to fumes, odors, dusts, gases, and poor ventilation. The claimant can never be exposed to unprotected heights and dangerous machinery. He is limited to performing simple, routine tasks, but not at a production rate pace. The claimant can occasionally interact with supervisors, co-workers, and the public. He is limited to routine workplace changes.

(*Id.*, PageID #87–88, 94.)

Finally, at step five, the ALJ determined that Mr. Koukouvitakis could not perform his past relevant work. (*Id.*, PageID #94.) However, the ALJ determined that Mr. Koukouvitakis can perform other jobs that exist in significant numbers in the national economy given his age, education, work experience, and residual functional capacity. (*Id.*, PageID #95.) Therefore, the ALJ found that Mr. Koukouvitakis was not disabled and denied his application. (*Id.*) The Appeals Council declined further review, rendering the ALJ's decision final on November 6, 2019. (*Id.*, PageID #65.)

### B. Medical Opinions Considered

In addition to other evidence in the record, including medical evidence and Mr. Koukouvitakis's testimony, the ALJ considered several medical opinions. (*Id.*, PageID #90–94.) Relevant to Plaintiff's first objection are the medical opinions of Drs. Victoria Liao, Gregory Davis, Gary Hinzman, Leon Hughes, Kristen Haskins, and Jaime Lai.

### B.1. Dr. Victoria Liao

On August 10, 2017, Dr. Liao, Psy.D., performed a psychological consultative evaluation for Mr. Koukouvitakis. (*Id.*, PageID #783–88.) Dr. Liao opined that Plaintiff had no impairments for maintaining attention and concentrating on simple tasks but had impairments for tasks that were complex or required the ability to remember information after a delay. (*Id.*, PageID #788.) Further, she opined that Mr. Koukouvitakis had "limitations in his ability to understand, remember, and carry out complex instructions," respond appropriately to supervision, coworkers, and work pressures due to mood disturbances, and effectively and consistently manage psychological symptoms. (*Id.*)

The ALJ gave "some weight" to Dr. Liao's opinion because it was "somewhat consistent with and supported by the medical records as whole," which show mostly "intact psychological objective findings, such as alertness, orientation, cooperativeness, and normal mood, affect, concentration, judgment, thought process, and attention span with the exception of anxiousness." (*Id.*, PageID #92–93.)

### B.2. Dr. Gregory Davis

Plaintiff's treating physician, Dr. Davis, D.O., examined Mr. Koukouvitakis several times. On September 12, 2016, Dr. Davis wrote that Mr. Koukouvitakis had severe tinnitus in his ear that disturbed his sleep. (*Id.*, PageID #944.) On April 19, 2018, Dr. Davis noted that he saw Mr. Koukouvitakis for medical management of his chronic low back pain and that Mr. Koukouvitakis had "been unable to work." (*Id.*, ECF No. 943.) On April 23, 2018, Dr. Davis noted that Mr. Koukouvitakis continued to be under his care and that Mr. Koukouvitakis was "unable to work due to his chronic low back pain." (*Id.*)

The ALJ gave "little weight" to Dr. Davis's opinion because he "did not provide vocationally relevant limitations" and his opinion was "inconsistent with and not supported by the medical records as a whole," which mostly showed normal gait, posture, range of motion, sensation, reflexes, and strength, with some exceptions. (*Id.*, PageID #92.) Further, the ALJ found that Dr. Davis' opinion was not supported by examinations of Mr. Koukouvitakis, which also mostly showed a normal range of motion, sensation, reflexes, and strength, with the exception of decreased range of motion in the lumbar spine. (*Id.*)

### B.3. Dr. Gary Hinzman & Dr. Leon Hughe

State agency reviewing medical consultants, Dr. Hinzman, M.D., and Dr. Hughes, M.D., evaluated Mr. Koukouvitakis' physical residual functional capacity. (*Id.*, PageID #162–65, 202–205, 221–24.) Dr. Hinzman and Dr. Hughes considered Plaintiff's obesity and spinal impairments and opined that

5

Mr. Koukouvitakis can lift or carry twenty pounds occasionally and ten pounds frequently and that Mr. Koukouvitakis should avoid climbing on ladders, ropes, and scaffolds at all times. (*Id.*, PageID #163, 222–23.) They also opined that Mr. Koukouvitakis should avoid concentrated exposure to noise, fumes, odors, dusts, gases, and poor ventilation because of his sleep apnea and all exposure to unprotected heights and heavy machinery because of his obesity. (*Id.*, PageID #164–65, 224.)

The ALJ gave "partial weight" to these opinions because they were "somewhat consistent with and supported by the record as a whole," which showed mostly normal gait, posture, range of motion, sensation, reflexes, and strength, with some exceptions. (*Id.*, PageID #92.) Further, the ALJ gave partial weight to the opinions because the medical consultants reviewed all of Mr. Koukouvitakis' medical records at the time of their opinions, had specific program knowledge, and were experts in the field. (*Id.*)

### B.4. Dr. Kristen Haskins & Dr. Jaime Lai

State agency reviewing psychological consultants, Dr. Haskins, Psy.D., and Dr. Lai, Psy.D., assessed Plaintiff's mental residual functional capacity. (*Id.*, PageID #165–67, 205–07, 224–26.) Dr. Haskins and Dr. Lai noted that Plaintiff could understand multistep tasks, "complete short cycle tasks in a setting without fast paced demand," "superficially engage with others," and "work within a set routine where major changes are explained in advance and gradually implemented to allow the claimant time to adjust to the new expectations." (ECF No. 11, PageID #165–67, 206–07.) They noted that Plaintiff's "ability to handle stress and pressure in the work

place would be reduced, but adequate to handle tasks without strict time limitations and production standards." (ECF No. 11, PageID #167, 207.)

The ALJ gave "partial weight" to Dr. Haskins's and Dr. Lai's opinions because they were "somewhat consistent with and supported by the record as a whole," which showed "mostly intact psychological objective findings such as alertness, orientation, cooperativeness, normal mood, affect, concentration, judgment, thought process, and attention span with the exception of anxiousness." (*Id.*, PageID #93.) The ALJ noted that, like the medical consultants, the psychological consultants had reviewed all of Mr. Koukouvitakis' medical records at the time of their opinions, had specific program knowledge, and were experts in the field. (*Id.*)

### C. Vocational Expert Testimony

To determine whether jobs exist in the national economy that Mr. Koukouvitakis could perform, the ALJ considered the testimony of a vocational expert. (*Id.*, PageID #95.) When asked if jobs exist in the national economy that an individual could perform with Plaintiff's age, education, work experience, residual functional capacity, and limitations, the vocational expert testified that this individual could perform the "light" work of a bench assembler, office cleaner, and mail clerk. (ECF No. 11, PageID #138–41.) Plaintiff's attorney also asked the vocational expert if someone who could have only occasional interaction with a supervisor could complete their training. (*Id.*, PageID #141–42.) The vocational expert replied, "maybe yes, maybe no" and clarified that training could involve anything from a simple demonstration to a thirty-day on-site training and that some

7

jobs may require occasional training, while others may require far more. (*Id.*, PageID #142.) Based on the vocational expert's testimony, the ALJ determined that Plaintiff was "not disabled" because he could perform jobs that exist in significant numbers in the national economy. (*Id.*, PageID #95.)

### D. Report and Recommendation

Mr. Koukouvitakis timely filed this action, seeking judicial review under 42 U.S.C. § 405(g). (ECF No. 1.) The Magistrate Judge issued a Report and Recommendation that the Court affirm the ALJ's decision denying Mr. Koukouvitakis's application. (ECF No. 18, PageID #1103.) Plaintiff objects to the Report and Recommendation, and the Court limits its discussion to the issues to which Plaintiff now objects. *See* 28 U.S.C. § 636(b). In the Court's view, Plaintiff's objections fall into two categories: first, whether the ALJ properly considered and evaluated the evidence (ECF No. 20, PageID #1106–07); and second, whether the ALJ met her burden at step five of the analysis (*id.*, PageID #1107).

With respect to the first issue, the Magistrate Judge noted that, when evaluating medical opinions for claims filed after March 27, 2017, the ALJ need not "give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." (ECF No. 18, PageID #1084.) The Magistrate Judge then noted that none of the medical opinions, except for Dr. Davis's, which lacked support in the record, indicated limitations preventing Plaintiff from performing "light work." (*Id.*, PageID #1085.) The Magistrate Judge proceeded to review each medical opinion and determined that substantial evidence

8

supported the ALJ's determination that Mr. Koukouvitakis could complete "light work." (*Id.*, PageID #1084–91.)

With respect to the second issue, the Magistrate Judge determined that substantial evidence supported the ALJ's finding that work was available in the national economy that Mr. Koukouvitakis could perform. (*Id.*, PageID #1102.) The Magistrate Judge noted that the ALJ posed a hypothetical to the vocational expert that properly included Mr. Koukouvitakis' limitations as supported by the record. (*Id.*) The vocational expert testified that there are jobs in the national economy available to someone with Mr. Koukouvitakis' vocational profile, and the ALJ properly relied on that testimony. (*Id.*, PageID #1100–03.)

### E. Plaintiff's Objections

Plaintiff objects to the Report and Recommendation, arguing that the Magistrate Judge made two errors. Plaintiff makes the following objections: (1) the ALJ failed to provide reasons why she accorded each medical opinion its respective weight; and (2) the ALJ's determination at step five was not supported by substantial evidence. ([ECF No. 20](), PageID #1106–07.)

## ANALYSIS

The Court reviews de novo the portions of a magistrate judge's report and recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and recommendation."

*Scott v. Saul*, No. 1:19-cv-2393, 2021 U.S. Dist. LEXIS 92052, at *12–13 (N.D. Ohio May 14, 2021); *see* 28 U.S.C. 636(b).

Where a party objects, review is limited to determining whether substantial evidence in the record supports the Commissioner's decision and to reviewing any legal errors. *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th Cir. 2003). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g).

## I. Consideration of Medical Opinions

Plaintiff objects that the ALJ failed to provide analysis consistent with the record for affording each medical opinion only "little, partial, or some weight." (ECF No. 20, PageID #1107.) When evaluating medical opinions for claims filed after March 27, 2017, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Instead, an ALJ need only articulate how "persuasive" she finds the medical opinions by explaining how she considered the medical opinions' "supportability" and "consistency." *Id.* § 404.1520c(b)(2). The ALJ may consider other factors listed in the regulations (20 C.F.R. § 404.1520c(c)(1)–(5)) but is not required to do so. *Id.* § 404.1520c(b)(2). Here, the ALJ explained the

10

extent to which each medical opinion was consistent with and supported by the record as a whole and cited the medical opinions' findings during her explanation of supportability and consistency. ([ECF No. 11](), PageID #92–93.)

As to Dr. Liao's opinions, which the ALJ afforded some weight, the ALJ explained they were "somewhat consistent with and supported by the medical records as a whole." (*Id.*, PageID #92.) Further, Dr. Liao's findings on examination of Mr. Koukouvitakis somewhat supported her opinions. (*Id.*, PageID #92–93.)

For the State agency reviewing medical and psychological consultants, the ALJ afforded their opinions partial weight. (*Id.*) The ALJ explained that the consultants' opinions were "somewhat consistent with and supported by the record as a whole." (*Id.*) The ALJ summarized the consultants' opinions and the corresponding parts of the medical record and supported them with specific citations. (*Id.*) Also relevant to the determination of weight of this evidence, the ALJ noted that the State agency consultants had reviewed all of Mr. Koukouvitakis' medical records, had specific program knowledge, and were experts in their fields. (*Id.*)

The ALJ afforded little weight to Dr. Davis's medical opinion. The ALJ found that Dr. Davis's pronouncement that Mr. Koukouvitakis was unable to work due to chronic low back pain was "inconsistent with and not supported by the record." (*Id.*, PageID #92.) Further, the ALJ found that Dr. Davis's opinion was not supported by his findings on examination of Mr. Koukouvitakis. (*Id.*) Finally, the ALJ noted that whether Mr. Koukouvitakis was able to work is an issue reserved for the Commissioner. (*Id.*)

In his objections to the Magistrate Judge's Report and Recommendation, Plaintiff relies on *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Commissioner of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). (ECF No. 20, PageID #1106–07.) There, the court held that an ALJ's determination of residual functional capacity was not supported by substantial evidence because the ALJ failed to provide adequate explanation of his consideration of the relevant opinion evidence. *Id.* at *14. While the ALJ claimed the medical opinions were inconsistent with the record, the court noted that the ALJ did not identify any record evidence in conflict. *Id.* at *12. Plaintiff argues that the ALJ here, like the one in *Lester*, failed to support her analysis for providing the respective weights to the medical opinions. (ECF No. 20, PageID #1107.) Unlike in *Lester*, however, the ALJ here supported her analysis of the medical opinion evidence with specific reference to the evidence in the record. Further, the ALJ's determination of Mr. Koukouvitakis' residual functional capacity and her determination that he could perform light work were consistent with the record and supported by substantial evidence. (ECF No. 18, PageID #1096.)

## II. Vocational Expert's Testimony

Plaintiff argues that the ALJ erred at step five because she failed to address the vocational expert's testimony that limitation to no more than occasional interaction with a supervisor may preclude an individual from completing his training. (ECF No. 20, PageID #1107.) In response, the Commissioner contends that

12

Plaintiff waived this argument by failing to raise it in his initial brief. (ECF No. 21, PageID #1109–10.)

Assuming Plaintiff has not waived this argument, the objection is without merit. At step five, the Commissioner must prove that there is work available in the economy that the claimant can perform. *Her v. Commissioner of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). Here, the vocational expert testified that there were jobs in the national economy that Mr. Koukouvitakis could perform given his residual functional capacity and other factors. (ECF No. 11, PageID #138–41.) Plaintiff argues that the "limitation to no more than occasional interaction with supervisors should have precluded Plaintiff from sustaining work." (ECF No. 20, PageID #1107.)

When asked whether someone who could have only occasional interaction with a supervisor could complete their training, the vocational expert responded, "maybe yes, maybe no." (ECF No. 11, PageID #142.) He clarified that the answer depended on the nature of the job training required. (*Id.*) The vocational expert's response leaves open the possibility that limited supervisor interaction would not affect Mr. Koukouvitakis' ability to perform at least certain potential jobs available in the national economy. (*Id.*, PageID #141–42.) Because the vocational expert did not testify that this limitation would "preclude" Mr. Koukouvitakis from work, the ALJ

13

did not err in determining that Mr. Koukouvitakis was capable of working. Accordingly, the Court determines that substantial evidence supports the ALJ's finding at step five.

## CONCLUSION

For the foregoing reasons, the Court **OVERULES** Plaintiff's objections (ECF No. 20), **ADOPTS** the Report and Recommendation (ECF No. 18), and **AFFIRMS** the Commissioner's denial of disability and disability benefits and supplemental security income. Further, the Court **DIRECTS** the clerk to enter judgment accordingly.

**SO ORDERED.**

Dated: January 24, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio